IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MICHAEL J.[1]**,

        Plaintiff,

    v.

**KILOLO KIJAKAZI,** Acting Commissioner of Social Security,

        Defendant.

Case No. 3:22-cv-1646-SI

**OPINION AND ORDER**

Kevin Kerr, KERR ROBICHAUX & CARROLL, P.O. Box 14490 Portland, OR 97293 Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Tyler J. Wetzel, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Michael J. seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

application for disability insurance benefits (DIB). For the following reasons, the Court reverses and remands the Commissioner's decision.

## STANDARD OF REVIEW

The decision of the Administrative Law Judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

A. **Plaintiff's Application**

Plaintiff applied for DIB on October 17, 2019, alleging a disability onset date of June 30, 2019. AR 196. Plaintiff's date of birth is January 25, 1973. *Id.* He was 46 years old as of the alleged disability onset date. The agency denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 72, 87, 101. Plaintiff appeared before an ALJ for a hearing on July 27, 2021. AR 33. Following the hearing, Plaintiff amended his alleged onset date to February 22, 2020, making him 49 years old as of the amended date. AR 207. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 15-29. Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner and Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

B. **The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.  The ALJ's Decision**

As a preliminary step for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025. AR 17. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity (SGA) between February 22, 2020, and March 31, 2020, and the opinion therefore addresses the continuous 12-month period during which Plaintiff did not engage in SGA. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: status post left knee surgery for degenerative joint disease and a torn meniscus, history of unstable angina secondary to underlying heart disease, chronic obstructive pulmonary disease in a smoker, mild lumber degenerative disc

disease, depression, and anxiety. AR 17-18. At step three, the ALJ determined that none of the impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform sedentary work as defined in 20 CFR 404.1567(a) except he can do "no more than frequent stooping, crouching, kneeling or climbing of ramps and stairs and no more than occasional crawling or climbing of ropes, ladders, or scaffolds." AR 20. Further, the ALJ found that Plaintiff would need to "avoid concentrated exposure to temperature extremes, dust, fumes, gases, poor ventilation and other noxious odors as well as unprotected heights, moving machinery, and similar hazards." *Id.* Plaintiff was" further limited to simple, repetitive, routine tasks with no more than occasional contact with supervisors, coworkers and the general public." *Id*. Based on the limitations in Plaintiff's RFC, the ALJ found that Plaintiff could not perform any past relevant work. AR 27. At step five, relying on testimony of a vocational expert (VE), and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including Touch Up Screener (40,000 jobs in the national economy), and Final Assembler (68,000 jobs in the national economy). AR 28. The ALJ thus concluded that Plaintiff was not disabled. AR 28-29.

## DISCUSSION

### A. Step Five Finding

Plaintiff argues that substantial evidence does not support the ALJ's step five finding because the VE inflated the number of jobs available to Plaintiff. At the hearing, Plaintiff asked the VE how he obtained the job numbers he identified. AR 56. The VE testified that he used the "Bureau of Labor Statistics, Department of Labor data and I utilize a number of sources. I utilize

PAGE 5 – OPINION AND ORDER

Employment Department Head Economists, as well as Job Browser Version 1.7." *Id.* The VE confirmed that his job numbers identified were "DOT specific." *Id.*

On October 14, 2021, Plaintiff submitted a letter memorandum with evidence to the Appeals Council. AR 275-82. Plaintiff argued in the letter that the VE reported "grossly inflated" job numbers. AR 276. Plaintiff recited the job numbers found by the VE that the ALJ concluded was consistent with the DOT. Plaintiff then explained:

> However, we have direct contradictory evidence to the job numbers. For Touch-Up Screener, there exists only 1,003 jobs nationally, per tbc Occupational Employment Statistics and the Employment Projections published by the Bureau of Labor Statistics, found through Job .Browser Pro. Final Assembler shows only 27 jobs nationally, and Lens Inserter, which the ALJ did not include, projects only I 35 jobs. This means that the projections for the occupations suggested by the vocational expert and accepted by the AU total only a mere 1030, or 1165 including the third occupation.

*Id.*

Plaintiff argues that under *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017), the Appeals Council was required to consider the evidence presented by Plaintiff regarding the vast discrepancy in actual job numbers, and remand by this Court is thus required. *See id.* at 1052 ("In this case, the vast discrepancy between the VE's job numbers and those tendered by Buck, presumably from the same source, is simply too striking to be ignored."). The Commissioner responds that Plaintiff's submitted job numbers were not significant and probative evidence that the Commissioner needed to consider and thus there is no error.

A VE's testimony is "one type of job information that is regarded as inherently reliable." *Buck*, 869 F.3d at 1051. Thus, substantial evidence supports an ALJ's findings about job numbers based on the VE's testimony when the plaintiff's only challenge to the VE's testimony is in the form of job numbers' data from a source different from the source relied on by the VE.

*See, e.g.*, *Solano v. Colvin*, 2013 WL 3776333, at *1 (C.D. Cal. July 16, 2013) (finding that a plaintiff's data from a source not relied on by the VE did not displace the reliability of the VE's testimony); *see also Wright v. Berryhill*, 692 F. App'x 496, 497 (9th Cir. 2017) (holding that the plaintiff's "alternative job numbers and criticism of the VE's sources" was not "a persuasive challenge to the ALJ's reliance on the VE's proffered job numbers"). When a plaintiff tenders vastly different job numbers from the same source as the VE, however, remand for the ALJ to address the inconsistency is warranted. *Buck*, 869 F.3d at 1052.

Plaintiff preserved his argument by questioning the VE during the hearing and then submitting supplemental evidence to the Appeals Council and challenging the accuracy of the VE's job numbers. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017) ("We hold that [a social security] claimant must, at a minimum, raise the issue of the accuracy of the expert's estimates at some point during administrative proceedings to preserve the challenge on appeal in federal district court."); *id.* at 1108 (concluding that the claimant waived challenging the VE's numbers by failing to "cross-examine the VE as to the accuracy of those estimates, or challenge that accuracy before the Appeals Council"); *see also White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022) ("We recognize that the claimant in *Buck* submitted his estimated job numbers to the ALJ, and that White submitted his estimated job numbers to the Appeals Council. This distinction is not fatal."). The VE testified that there were 40,000 touchup screener jobs, 68,000 final assembler jobs, and 65,000 lens inserter jobs available in the national economy.[2] AR 54. According to Plaintiff, however, Job Browser Pro showed that there were only 1,003 touchup screener jobs, 27 final assembler jobs, and 135 lens inserter jobs in the national economy.

---

[2] The ALJ did not include the lens inserter position in the final opinion.

AR 277, 279, 281. Plaintiff's evidence shows that in total, there may be as few as 1,165 jobs available to Plaintiff as opposed to the 173,000 that the VE asserted.

The Commissioner argues that Plaintiff's case is directly analogous to *Wischmann v. Kijakazi*, 68 F.4th 498 (9th Cir. 2023), and the ALJ's decision should therefore be affirmed. In *Wischmann*, the plaintiff challenged the ALJ's conclusion, based on a VE's testimony, that a significant number of jobs existed in the national economy. *Id.* at 504. The plaintiff sent a letter to the Appeals Council attaching six pages of printouts from Job Browser Pro that contained numbers that were drastically lower than the job numbers offered by the VE. *Id* at 503. The printouts, however, were undecipherable, with confusing headings and columns titles such as "QSS-Q.LQ.up" and "Selt:gulgy-ed." *Id.* The attorney did not discuss the printouts in the letter to the Appeals Council and the printouts were not self-explanatory. *Id.* at 503-04. The pages did not indicate their source, the process by which the data were generated, or how the information supported the plaintiff's claim, and the numbers did not match the plaintiff's argument. *Id*. at 503. The Ninth Circuit concluded that the data was not probative because the printouts were not identifiable as from Job Browser Pro, were no comprehensible, and gave no indication of a date such that it could be determined whether the data was out of date. *Id.* at 507. The Ninth Circuit also explained that because the pages provided no information about how the job numbers were produced, did not indicate it was produced using the same methodology of the VE, did not state who produced the outputs, and did not provide information on what other variables may have been entered, the information provided was not probative. *Id* at 506-07.

The Commissioner's reliance on *Wischmann* is unpersuasive. Plaintiff's evidence is not indecipherable like in *Wischmann*. The printouts do not contain the same type of unexplainable columns of information. Plaintiff's evidence is readily understandable. Plaintiff also explained in

the cover memorandum sent to the Appeals Council that Plaintiff's counsel obtained the data using Job Browser Pro, thus identifying the source and the person who obtained the data. Plaintiff used the DOT job numbers, as the VE confirmed he used. The printouts from Job Browser Pro also describe the software's sources of information, which include the Bureau of Labor Statistics, U.S. Department of Labor; the United States Census Bureau; and SkillTRAN, LLC. *See, e.g.*, AR 280. Thus, other than "Employment Department Head Economists," Plaintiff's data includes the same sources that the VE testified he used. Additionally, the numbers provided in Plaintiff's argument correspond to the numbers on the Job Browser Pro printouts. Further, the sources identified in the printout include dates of the government databases that are as recent as 2019, thereby showing that the data was not out of date at the time the comparables were run (October 2021). Thus, the deficiencies identified in *Wischmann* are not present.

Further, when the court in *Wischmann* concluded that the evidence in that case did not indicate that the claimant used the same methodology as the VE, the court was quoting *White*. In *White*, the Ninth Circuit considered the attorney's methodology to be the same as the VE's when the attorney "us[ed] SkillTRAN Job Browser Pro and the same DOT codes the VE had used." *White*, 44 F.4th at 837. The same is true here—the printouts reflect that Plaintiff's attorney used the DOT codes, which the VE confirmed he used, and Plaintiff's attorney's letter explains he used Job Browser Pro.

Moreover, the Ninth Circuit remanded in *Buck* based on data that the court concluded was "presumably from the same source" as the VE, based on the contention that the plaintiff's attorneys "allegedly us[ed] the same software program as the VE" to determine lower job numbers. *Buck*, 869 F.3d at 1047. The Ninth Circuit reached the same conclusion in *White*. In

*White* the VE testified to job numbers and the Ninth Circuit considered evidence from the plaintiff's attorney that included "different estimates for those same jobs, allegedly using the same software program as used by the VE." *Id.* at 830. Relying on *Buck*, the Ninth Circuit remanded for further proceedings based on the "vastly discrepant job-number estimates." *Id.* The evidence submitted by the attorney was "screenshots of SkillTRAN Job Browser Pro showing these job numbers" along with the attorney's description of the jobs and the DOT job codes submitted to the Appeals Council. *Id.* at 832.

A court must consider "whether there is support for a claimant's counsel's approach in generating job-number estimates in determining whether new evidence is significant and probative." *Id.* at 836 (cleaned up). There is support for Plaintiff's counsel's approach in this case. Plaintiff's evidence is similar to the evidence in *White* and *Buck* and not *Wischmann*. Plaintiff's attorneys used Job Browser Pro and the same DOT codes the VE used. Plaintiff's printouts clearly identify the jobs, the DOT codes identifying the job positions, information sources and dates, and available positions in the national economy. And while it is true that Job Browser Pro is a "tool . . . meant to assist a VE in performing a complex matching exercise of various sources of information," *Wischmann*, 68 F.4th at 507, Plaintiff's evidence shows he used the same sources of information the VE testified to using. It is reasonable to assume the same program would produce the same information given the VE testified to only using the DOT specific numbers. *See* AR 56, 278, 280, 282. *Buck* makes it clear that "the vast discrepancy between the VE's job numbers and those tendered by [Plaintiff], presumably from the same source, is simply too striking to be ignored." *Buck*, 869 F.3d at 1052. Plaintiff's new evidence is significant and probative.

PAGE 10 – OPINION AND ORDER

Considering that there may be only 1,165 jobs available to Plaintiff, the record lacks substantial evidence to support the ALJ's finding that Plaintiff can perform jobs that exist in significant numbers in the national economy. *See Randazzo v. Berryhill*, 725 F. App'x 446, 448 (9th Cir. 2017) (stating that 10,000 jobs "may not amount to a significant number of jobs in the national economy"); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (stating that 25,000 jobs in the national economy was a "close call"); *Lisa L. v. Comm'r of Soc. Sec.*, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018) (concluding that 11,084 jobs was not a significant number of jobs); *Watkins v. Comm'r Soc. Sec. Admin.*, 2016 WL 4445467, at *7 (D. Or. Aug. 22, 2016) (concluding that 11,000 jobs was not a significant number of jobs but finding harmless error based on other grounds). Thus, the ALJ failed to meet the Commissioner's step five burden.

**B.  Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the

record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

There remain ambiguities and conflicts in the record. The ALJ needs to take evidence about whether Plaintiff can perform jobs that exist in significant numbers in the national economy. *See Buck*, 869 F.3d at 1052 (remanding to address the inconsistency between the number of jobs presented by the VE and the plaintiff). Thus, the Court remands for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 3rd day of November, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge